## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| OHIO CARPENTERS PENSION FUND and CITY OF PONTIAC REESTABLISHED GENERAL EMPLOYEES' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, | Civil Action No. |
| Plaintiffs, | DEMAND FOR JURY TRIAL |
| v. | CLASS ACTION |
| NORFOLK SOUTHERN CORPORATION, ALAN H. SHAW, JAMES A. SQUIRES, MARK R. GEORGE, CLYDE H. ALLISON, JR., THOMAS D. BELL, JR., MITCHELL E. DANIELS, JR., MARCELA D. DONADIO, JOHN C. HUFFARD, CHRISTOPHER T. JONES, THOMAS C. KELLEHER, STEVEN F. LEER, MICHAEL D. LOCKHART, AMY E. MILES, CLAUDE MONGEUA, JENNIFER F. SCANLON, JOHN R. THOMPSON, BOFA SECURITIES, INC., MORGAN STANLEY & CO. LLC, WELLS FARGO SECURITIES, LLC, CAPITAL ONE SECURITIES, INC., FIFTH THIRD SECURITIES, INC., MUFG SECURITIES AMERICA, INC., PNC CAPITAL MARKETS LLC, SIEBERT WILLIAMS SHANK & CO., LLC, SMBC NIKKO SECURITIES AMERICA, INC., CITIGROUP GLOBAL MARKETS, INC., GOLDMAN SACHS & CO. LLC, and U.S. BANCORP INVESTMENTS, INC., | |
| Defendants. | |

## CLASS ACTION COMPLAINT FOR VIOLATION
## OF THE FEDERAL SECURITIES LAWS

## INTRODUCTION

Plaintiffs Ohio Carpenters Pension Fund and City of Pontiac Reestablished General Employees' Retirement System (together, the "Plaintiffs"), individually and on behalf of all other persons similarly situated, by Plaintiffs' undersigned attorneys, for Plaintiffs' complaint against Defendants (as defined herein), allege the following based upon personal knowledge as to Plaintiffs and Plaintiffs' own acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiffs' attorneys, which included, among other things, a review of certain U.S. Securities and Exchange Commission ("SEC") filings and press releases by Norfolk Southern Corporation ("Norfolk Southern" or the "Company"), as well as media reports about the Company and the facts alleged herein.[1]  Plaintiffs believe that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This securities class action is brought on behalf of a "Class" of all persons and entities that purchased or otherwise acquired Norfolk Southern senior notes (the "Senior Notes") pursuant, or traceable, or both, to the Company's offerings listed below (the "Offerings"):

| Offering Date | Security | CUSIP | Total Offering Value |
|---|---|---|---|
| August 18, 2020 | 3.155% Senior Notes due 2055 | 655844CH9 | $799,997,000 |
| May 3, 2021 | 2.300% Senior Notes due 2031 | 655844CK2 | $500,000,000 |
| May 3, 2021 | 4.100% Senior Notes due 2121 | 655844CJ5 | $600,000,000 |
| August 16, 2021 | 2.900% Senior Notes due 2051 | 655844CL0 | $600,000,000 |
| February 15, 2022 | 3.000% Senior Notes due 2032 | 655844CM8 | $600,000,000 |
| February 15, 2022 | 3.700% Senior Notes due 2053 | 655844CN6 | $400,000,000 |
| June 2, 2022 | 4.550% Senior Notes due 2053 | 655844CP1 | $750,000,000 |
| January 26, 2023 | 4.450% Senior Notes due 2054 | 655844CQ9 | $500,000,000 |

---

[1] Emphasis has been added unless otherwise noted.

2. This action asserts claims for violations of Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 (the "Securities Act"), against Norfolk Southern and certain of its officers, directors, and underwriters of the Offerings (together, the "Defendants").

3. Under Sections 11, 12(a)(2), and 15 of the Securities Act, Defendants (as defined herein) are liable for materially false and misleading statements contained in the Offering Materials (as defined herein).  Plaintiffs expressly exclude and disclaim any allegation that could be construed as alleging fraud or intentional reckless conduct as to any of the claims.

4. Norfolk Southern is a major rail transportation company.  Norfolk Southern is primarily focused on the rail transportation of raw materials, intermediate products, and finished goods across the Southeast, East, and Midwest United States.  The Company further facilitates transport to the remainder of the United States through interchange with other rail carriers and serves overseas transport through several Atlantic and Gulf Coast ports.

5. This action is about how the Offering Materials failed to disclose material safety risks in connection with Norfolk Southern's implementation of its Precision Scheduled Railroading ("PSR"), a strategy adopted by the Company in 2019.  PSR was designed to increase revenues and decrease costs by enacting hyper-efficient operational changes like reductions in staff, tighter schedules, and longer trains that can stretch up to miles in length.  Under PSR, fewer trains run on routes, but cars tend to be heavier because they are packed with more cargo.  This strategy reduces the need for costly locomotives, and some can be taken out of service, reducing expenses.

6. On July 29, 2020, Norfolk Southern filed with the SEC a registration statement on Form S-4 (the "2020 Registration Statement") to exchange up to approximately $800 million in notes that were previously issued by the Company for Senior Notes registered under the Securities

Act (the "2020 Exchange Offer"). On August 18, 2020, the SEC declared the 2020 Registration Statement effective, authorizing Norfolk Southern to exchange the outstanding notes for newly SEC-registered Senior Notes. Also on August 18, 2020, Norfolk Southern filed with the SEC a related prospectus on Form 424B3 which incorporated and formed part of the 2020 Registration Statement. The "Offerings" and "Offering Materials" referred to herein include the 2020 Exchange Offer and the 2020 Registration Statement, respectively.

7.      On February 4, 2021, Norfolk Southern filed with the SEC a shelf registration statement on Form S-3 ASR (the "2021 Registration Statement") authorizing the Company to sell various types of securities to public investors, including debt securities. Between 2021 and 2023, Norfolk Southern filed with the SEC five prospectus supplements in connection with the 2021 Registration Statement on Forms 424B5. Pursuant to these prospectus supplements, Norfolk Southern issued seven different Senior Notes for total proceeds of $3.95 billion (the "2021-2023 Offerings"). The "Offerings" referred to herein include the 2021-2023 Offerings. Likewise, the "Offering Materials" referred to herein include the 2021 Registration Statement and the five related prospectus supplements.

8.      The Offering Materials were negligently prepared and, as a result, contained untrue statements of material fact, omitted material facts necessary to make the statements contained therein not misleading, and failed to make necessary disclosures required under the rules and regulations governing its preparation.

9.      Specifically, the statements contained in the Offering Materials were materially false and misleading when made because the Offering Materials touted the Company's focus on safety and environmental protection while failing to disclose the following adverse facts that existed at the time of the Offerings that were later disclosed to the public:

(a)     the PSR strategy had led to increased train derailments and an increased risk of future derailments;

(b)     the PSR strategy was part of a culture of increased risk-taking at the expense of reasonable safety precautions due to the Company's near-term focus on profits;

(c)     the Company was more vulnerable to train derailments;

(d)     Norfolk Southern's capital spending and replacement programs were designed to prioritize profits over the Company's ability to provide safe, efficient, and reliable rail transportation services;

(e)     the Company's lobbying efforts had undermined its ability to provide safe, efficient, and reliable rail transportation services;

(f)      the PSR strategy undermined worker safety and the Company's purported "commitment to an injury-free workplace" because the Company's PSR plan prioritized reducing expenses through fewer personnel, longer trains, and less spending on safety training, technology, and equipment;

(g)     the PSR strategy rendered Norfolk Southern more susceptible to accidents that could cause serious economic and bodily harm; and

(h)     the Company failed to put in place responsive practices and procedures to minimize the threat to communities in the event that these communities suffered the derailment of a Norfolk Southern train carrying hazardous and toxic materials.

10.     The undisclosed adverse facts and circumstances detailed above made an investment in the Senior Notes speculative or risky, and presented known trends, uncertainties, and risks that required disclosure in the Offerings Materials which were not disclosed, including adverse trends and risks related to the safety of Norfolk Southern's operations.

11.     As a result of these misleading statements and omissions, the price of the Senior Notes dropped significantly causing hundreds of millions of dollars in damages to holders of the Senior Notes.

## JURISDICTION AND VENUE

12.     The claims asserted arise under Sections 11, 12, and 15 of the Securities Act (15 U.S.C. §§ 77k, 77l, and 77o).

13.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and Section 22 of the Securities Act (15 U.S.C. § 77v).

14.     Personal jurisdiction and venue are proper in this District pursuant to Section 22 of the Securities Act (15 U.S.C. § 77v(c)) and 28 U.S.C. § 1391(b).  Norfolk Southern conducts significant operations within this District and a substantial part of the events giving rise to these claims occurred in this District.  The statements alleged to be materially false and misleading were disseminated into this District and injured Class members reside in this District.

15.     In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

16.     Plaintiffs purchased Senior Notes pursuant to the Offering Materials and were damaged thereby.

17.     Defendant Norfolk Southern is a rail transportation company that is incorporated under the laws of the Commonwealth of Virginia.  The Company is headquartered in Atlanta, Georgia and operates in several U.S. states including New York, Ohio, Illinois, Pennsylvania, and Tennessee.

5

18.     Defendant Alan H. Shaw ("Shaw") has been Chief Executive Officer ("CEO") of Norfolk Southern since May 1, 2022 and President since December 1, 2021.  Shaw has been a Director of Norfolk Southern since 2022.   Shaw previously served as Norfolk Southern's Executive Vice President and Chief Marketing Officer, Vice President Intermodal Operations, and in various other positions since joining the Company in 1994.  Shaw was a Director of the Company at the time of the filing of certain prospectus supplements, in connection with the 2021 Registration Statement, that contain false and misleading statements.

19.     Defendant James A. Squires ("Defendant Squires") served as Chairman of the Board of Directors (the "Board") and CEO of Norfolk Southern from 2015 to May 2022.  Squires served as the Company's President from June 2013 until December 2021.  He has been a Director of the Company since 2014.  Defendant Squires signed the 2020 Registration Statement and the 2021 Registration Statement.

20.     Defendant Mark R. George ("Defendant George") has served as Executive Vice President and Chief Financial Officer ("CFO") of Norfolk Southern since November 2019. Defendant George signed the 2020 Registration Statement and the 2021 Registration Statement.

21.     Defendant Clyde H. Allison, Jr. ("Defendant Allison") served as Vice President and Controller of Norfolk Southern from June of 2020 to February of 2022.  Allison signed the 2020 Registration Statement and the 2021 Registration Statement.

22.     Defendant Thomas D. Bell, Jr. ("Defendant Bell") has been a member of Norfolk Southern's Board since 2010.  Defendant Bell signed the 2020 Registration Statement and the 2021 Registration Statement.

23.     Defendant Mitchell E. Daniels, Jr. ("Defendant Daniels") has been a member of Norfolk Southern's Board since 2016.  Defendant Daniels signed the 2020 Registration Statement and the 2021 Registration Statement.

24.     Defendant Marcela E. Donadio ("Defendant Donadio") has been a member of Norfolk Southern's Board since 2016.  Defendant Donadio signed the 2020 Registration Statement and the 2021 Registration Statement.

25.     Defendant John C. Huffard, Jr. ("Defendant Huffard") has been a member of Norfolk Southern's Board since 2020.  Defendant Huffard signed the 2020 Registration Statement and the 2021 Registration Statement.

26.     Defendant Christopher T. Jones ("Defendant Jones") has been a member of Norfolk Southern's Board since 2020.  Defendant Jones signed the 2020 Registration Statement and the 2021 Registration Statement.

27.     Defendant Thomas C. Kelleher ("Defendant Kelleher") has been a member of Norfolk Southern's Board since 2019.  Defendant Kelleher signed the 2020 Registration Statement and the 2021 Registration Statement.

28.     Defendant Steven F. Leer ("Defendant Leer") has been a member of Norfolk Southern's Board since 1999.  Defendant Leer signed the 2020 Registration Statement and the 2021 Registration Statement.

29.     Defendant Michael D. Lockhart ("Defendant Lockhart") has been a member of Norfolk Southern's Board since 2008.  Defendant Lockhart signed the 2020 Registration Statement and the 2021 Registration Statement.

30.     Defendant Amy E. Miles ("Defendant Miles") has been a member of Norfolk Southern's Board since 2014.  Defendant Miles signed the 2020 Registration Statement and the 2021 Registration Statement.

31.     Defendant Claude Mongeau ("Defendant Mongeau") has been a member of Norfolk Southern's Board since 2019.   Defendant Mongeau signed the 2020 Registration Statement and the 2021 Registration Statement.

32.     Defendant Jennifer F. Scanlon ("Defendant Scanlon") has been a member of Norfolk Southern's Board since 2018.  Defendant Scanlon signed the 2020 Registration Statement and the 2021 Registration Statement.

33.     Defendant John R. Thompson ("Defendant Thompson") has been a member of Norfolk Southern's Board since 2013.   Defendant Thompson signed the 2020 Registration Statement and the 2021 Registration Statement.

34.     Defendants referenced above in ¶¶ 18-33 are referred to herein as the "Individual Defendants."

35.     Each of the Individual Defendants was directly involved in the management and day-to-day operations of the Company at the highest levels and was privy to confidential proprietary information concerning the Company and its business, operations, services, competition, and present and future business prospects.  In addition, the Individual Defendants were involved in drafting, producing, reviewing, and disseminating the false and misleading statements and information alleged herein, were aware of, or recklessly disregarded, the false and misleading statements being issued regarding the Company, and approved or ratified these statements, in violation of the federal securities laws.

36.     As officers and controlling persons of a publicly held company whose securities are registered with the SEC pursuant to the Securities Exchange Act of 1934 and traded on the NYSE, which is governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to promptly disseminate accurate, truthful, and complete information with respect to the Company's operations, business, services, markets, competition, and present and future business prospects.  In addition, the Individual Defendants each had a duty to correct any previously issued statements that were materially misleading or untrue, so that the market price of the Company's securities would be based upon truthful, accurate, and complete information.  The false and misleading misrepresentations and omissions contained in the Offering Materials violated these specific requirements and obligations.

37.     Defendant BofA Securities, Inc. served as an underwriter for certain of the Offerings.  BofA Securities, Inc. maintains its corporate headquarters in this District and conducts business operations in this District.

38.     Defendant Morgan Stanley & Co. LLC served as an underwriter for certain of the Offerings.  Morgan Stanley & Co. LLC maintains its corporate headquarters in this District and conducts business operations in this District.

39.     Defendant Wells Fargo Securities, LLC served as an underwriter for certain of the Offerings.  Wells Fargo Securities, LLC maintains its corporate headquarters in Charlotte, North Carolina and conducts business operations in this District.

40.     Defendant Capital One Securities, Inc. served as an underwriter for certain of the Offerings.  Capital One Securities, Inc. maintains its corporate headquarters in New Orleans, Louisiana and conducts business operations in this District.

41.     Defendant Fifth Third Securities, Inc. served as an underwriter for certain of the Offerings.  Fifth Third Securities, Inc. maintains its corporate headquarters in Cincinnati, Ohio and conducts business operations in this District.

42.     Defendant MUFG Securities Americas Inc. served as an underwriter for certain of the Offerings.  MUFG Securities Americas Inc. maintains its corporate headquarters in this District and conducts business operations in this District.

43.     Defendant PNC Capital Markets LLC served as an underwriter for certain of the Offerings.  PNC Capital Markets LLC maintains its corporate headquarters in Allegheny, Pennsylvania and conducts business operations in this District.

44.     Defendant Siebert Williams Shank & Co., LLC served as an underwriter for certain of the Offerings.  Siebert Williams Shank & Co., LLC maintains its corporate headquarters in this District and conducts business operations in this District.

45.     Defendant SMBC Nikko Securities America, Inc. served as an underwriter for certain of the Offerings.   SMBC Nikko Securities America, Inc. maintains its corporate headquarters in this District and conducts business operations in this District.

46.     Defendant Citigroup Global Markets Inc. served as an underwriter for certain of the Offerings.  Citigroup Global Markets Inc. maintains its corporate headquarters in this District and conducts business operations in this District.

47.     Defendant Goldman Sachs & Co. LLC served as an underwriter for certain of the Offerings.  Goldman Sachs & Co. LLC maintains its corporate headquarters in this District and conducts business operations in this District.

48.     Defendant U.S. Bancorp Investments, Inc. served as an underwriter for certain of the Offerings.  U.S. Bancorp Investments, Inc. maintains its corporate headquarters in St. Paul, Minnesota and conducts business operations in this District.

49.     Defendants referenced above in ¶¶ 37-48 are referred to herein as the "Underwriter Defendants."   The Underwriter Defendants' failure to conduct adequate due diligence in connection with the Offerings and the preparation of the Offering Materials was a substantial factor leading to the harm complained of herein.

50.     The Individual Defendants and Underwriters Defendants are collectively referred to herein as "Defendants."

## BACKGROUND

**Company Background**

51.     Defendant Norfolk Southern is a Class I rail carrier[2] that operates the Norfolk Southern Railway, a freight railroad located in the Eastern United States that spans 19,200 route miles in 22 U.S. states and the District of Columbia.  Norfolk Southern was incorporated under the laws of the Commonwealth of Virginia on July 23, 1980.  Norfolk Southern and its subsidiaries are primarily engaged in the rail transportation of raw materials, intermediate products, and finished goods in the Southeast, East, and Midwest and, via interchange with rail carriers, to and from the rest of the United States.  The Company also transports overseas freight through several Atlantic and Gulf Coast ports.  Norfolk Southern's footprint reaches numerous manufacturing plants, electric generating facilities, mines, distribution centers, transload facilities, and other businesses located in the Company's service area.

---

[2] Class I carriers are the largest freight railroad companies in the United States based on annual revenues.  The Company is currently one of six Class I carriers.

**Norfolk Southern Adopts "Precision Scheduled Railroading"**

52.     Most of the largest U.S. freight railroads have implemented a strategy called "Precision Scheduled Railroading" or "PSR."  PSR is based on hyper-efficient operational changes designed to increase revenues and decrease costs for railroad operators.  These operational changes include: (1) reductions in staff; (2) longer and heavier trains; and (3) reductions in costly assets such as locomotives.  The overall number of staff among the Class I freight railroads carriers decreased by about 28% from 2011 through 2021.  As an example of the significant impact of PSR on the Company's operations, in 2022 Norfolk Southern employed an average of about 19,000 people compared with about 27,000 people 5 years earlier.

53.     On February 11, 2019, at the Company's Investor and Financial Analyst Conference presentation, Norfolk Southern executives laid out the Company's three-year transformational plan to implement PSR (which the Company referred to as the "TOP21" plan). The TOP21 plan included reducing staff and running fewer, heavier and longer trains to increase efficiency and lower costs.

54.     Norfolk Southern's "Operating Ratio" (operating expenses divided by operating revenues) was a key metric to gauge the progress of the TOP21 plan implementation.  In essence, the Company sought to significantly increase revenues while cutting costs.  The Company set a goal of reducing its Operating Ratio to 60% by 2021 (it was then running at 65.4%).  In furtherance of this goal, Company executives determined that the railroad would need to cut headcount by 500 people in 2019 and by 3,000 people by 2021.  The Company set a tight deadline to complete its transition, namely, full PSR implementation by 2021.

55.     Norfolk Southern's 2019 annual report highlighted the importance of the Company's PSR adoption to its operations, stating in pertinent part as follows:

2019 was a year of transformation for Norfolk Southern. With a commitment to enhance shareholder value, we rolled out a new three-year plan to reimagine our company. Thanks to the hard work and determination of our employees, we made great progress, changing the way we operate our railroad, improving customer service, and building a foundation for long-term growth.

\*     \*     \*

*We set company records for train speed, which improved 17% year-over- year, and terminal dwell, which was down 30%. . . .*

*Propelling these improvements was the adoption of our brand of precision scheduled railroading, or PSR.* Thoughtful planning, customer collaboration, and diligent execution were the brand's hallmarks. In late 2018, we introduced PSR to the market with a "Clean Sheeting" initiative to streamline terminal operations and speed the flow of rail cars from yards to customers. *In midyear 2019, we launched TOP21, a new operating plan that overhauls the way we run trains across the network. With TOP21, we're running fewer, heavier trains*, reducing circuity and train miles, reducing car handlings, *and increasing network velocity*.

**The Safety Risks Posed By Northern Southern's PSR Strategy**

56.    Safety concerns have been mounting in the railroad industry as a result of PSR policies including the growing length of trains and increased efforts to reduce costs and headcount. Longer trains coupled with fewer personnel to inspect, maintain, and operate each train increase the potential for accidents.  PSR has been described as a system stretched to its limits, with one Norfolk Southern employee stating: "The workers are exhausted, times for car inspections have been drastically cut, and there are no regulations on the size of these trains."

57.    Indeed, these risks have materialized at Norfolk Southern.  For example, in December 2022, when the U.S. Government Accountability Office reported on Norfolk Southern's accident rate, it found the Company had hit a 10-year high in 2021 with the Company's accident rate at its highest from 2019-2021, showing that the accident rate spiked after the Company

adopted PSR.  In fact, the Company's Federal Railroad Administration ("FRA") train accident rate has increased for each of the last four years.

**Norfolk Southern's Political Spending Prioritized Its PSR Objectives Over Safety**

58.     As Norfolk Southern embraced PSR, its lobbying efforts ramped up, including at both the federal and state level, to prevent safety regulations that would increase costs and harm operating margins.  Legislative records obtained by *Scripps News* and others confirm that Norfolk Southern spent tens of millions of dollars over the years lobbying state governments, Congress, and federal agencies – trying to block potentially costly safety reforms on multiple occasions, including by opposing whistleblower protections and speed limits for high-hazard flammable trains.  Norfolk Southern has also opposed an ongoing federal effort to require a minimum number of crew members on a train.  In December 2022, the Company reportedly told the FRA that running trains with a one-person crew is safe.  Lobbying and campaign donations occurred at the state level as well.  For example, in Ohio alone, the Company made over 100 contributions to Ohio state officials and candidates totaling $98,000 over the last 5 years, according to data from Ohio's secretary of state.

## MATERIALLY FALSE AND MISLEADING STATEMENTS IN THE OFFERING MATERIALS

59.     The Offering Materials were negligently prepared and, as a result, contained untrue statements of material fact, omitted material facts necessary to make the statements contained therein not misleading, and failed to make necessary disclosures required under the rules and regulations governing its preparation.

60.     On or about August 18, 2020, Norfolk Southern issued a prospectus supplement on Form 424B3 to offer to exchange up to $799,997,000 in 3.155% Senior Notes due 2055 for the

same amount of outstanding notes.  This prospectus supplement incorporated and formed part of the 2020 Registration Statement (together, the "August 2020 Materials").

61.    The August 2020 Materials contained untrue statements of material fact and omitted material facts necessary to make the statements contained therein not misleading.  For instance, the August 2020 Offering Materials incorporated by reference Norfolk Southern's annual report on Form 10-K for the year ended December 31, 2019 (the "2019 Annual Report").  The 2019 Annual Report touted the Company's focus on and investment in safety and environmental protection, claiming that the Company's "*capital spending and replacement programs are and have been designed to assure the ability to provide safe, efficient, and reliable rail transportation services.*"   The 2019 Annual Report also claimed that "one of [the] principal goals," of the Company was "*[c]ompliance with federal, state, and local laws and regulations relating to the protection of the environment is one of our principal goals.*"

62.    As required by the Sarbanes-Oxley Act of 2002 ("SOX"), Defendants Squires and George certified that they had reviewed the 2019 Annual Report and that it "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report."

63.    On or about May 5, 2021, Norfolk Southern issued a prospectus supplement on Form 424B5 to offer $500,000,000 in 2.300% Senior Notes due 2031 and $600,000,000 in 4.100% Senior Notes due 2121.  This prospectus supplement incorporated and formed part of the 2021 Registration Statement (together, the "May 2021 Materials").

64.    The May 2021 Materials contained untrue statements of material fact and omitted material facts necessary to make the statements contained therein not misleading.  For instance,

the May 2021 Offering Materials incorporated by reference Norfolk Southern's annual report on Form 10-K for the year ended December 31, 2020 (the "2020 Annual Report"). The 2020 Annual Report touted the Company's focus on and investment in safety and environmental protection, claiming, for instance, that the Company's "*capital spending and replacement programs are and have been designed to assure the ability to provide safe, efficient, and reliable rail transportation services.*"

65.     The 2020 Annual Report also claimed that "one of [the] principal goals," of the Company was "*[c]ompliance with federal, state, and local laws and regulations relating to the protection of the environment is one of our principal goals.*" It further states that "[g]iven the importance of safety among [Norfolk Southern's] workforce and business, *in 2020, our Board of Directors established a standing Safety Committee that, among other duties, reviews, monitors, and evaluates our compliance with our safety programs and practices*." The 2020 Annual Report claimed that the Company was "*dedicated to providing employees with a safe workplace and the knowledge and tools they need to work safely and return home safely every day. Our commitment to an injury-free workplace is illustrated by our 'I am Coming Home' safety message, which is featured prominently in our yards, shops, and facilities and further reinforces the importance of working safely*." It also touted that the Company provided "*a range of developmental programs, opportunities, skills, and resources for our employees to work safely and be successful in their careers,*" including, providing "*hands-on training and simulation training designed to improve training effectiveness and safety outcomes*."

66.     As required by SOX, Defendants Squires and George certified that they had reviewed the 2020 Annual Report and that it "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the

circumstances under which such statements were made, not misleading with respect to the period covered by this report."

67.     On or about August 18, 2021, Norfolk Southern issued a prospectus supplement on Form 424B5 to offer $600,000,000 in 2.900% Senior Notes due 2051.  This prospectus supplement incorporated and formed part of the 2021 Registration Statement (together, the "August 2021 Materials").

68.     The August 2021 Materials contained untrue statements of material fact and omitted material facts necessary to make the statements contained therein not misleading.  For instance, the August 2021 Materials incorporated by reference the 2020 Annual Report which contained the statements described in ¶¶ 64-66.

69.     On or about February 17, 2022, Norfolk Southern issued a prospectus supplement on Form 424B5 to offer $600,000,000 in 3.000% Senior Notes due 2032 and $400,000,000 in 3.700% Senior Notes due 2053.  This prospectus supplement incorporated and formed part of the 2021 Registration Statement (together, the "February 2022 Materials").

70.     The February 2022 Materials contained untrue statements of material fact and omitted material facts necessary to make the statements contained therein not misleading.  For instance, the February 2022 Materials incorporated by reference Norfolk Southern's annual report on Form 10-K for the year ended December 31, 2021 (the "2021 Annual Report").  The 2021 Annual Report made substantially the same statement contained in the 2020 Annual Report described in ¶¶ 64-66.

71.     On or about June 6, 2022, Norfolk Southern issued a prospectus supplement on Form 424B5 to offer $750,000,000 in 4.550% Senior Notes due 2053.  This prospectus supplement

incorporated and formed part of the 2021 Registration Statement (together, the "June 2022 Materials").

72.     The June 2022 Materials contained untrue statements of material fact and omitted material facts necessary to make the statements contained therein not misleading.  For instance, June 2022 Offering Materials incorporated by reference the 2021 Annual Report.  The 2021 Annual Report made substantially the same statement contained in the 2020 Annual Report described in ¶¶ 64-66.

73.     On or about January 27, 2023, Norfolk Southern issued a prospectus supplement on Form 424B5 to offer $500,000,000 in 4.450% Senior Notes due 2054.  This prospectus supplement incorporated and formed part of the 2021 Registration Statement (together, the "January 2023 Materials").

74.     The January 2023 Materials contained untrue statements of material fact and omitted material facts necessary to make the statements contained therein not misleading.  For instance, the January 2023 Offering Materials incorporated by reference the 2021 Annual Report. The 2021 Annual Report made substantially the same statement contained in the 2020 Annual Report described in ¶¶ 64-66.

## STATEMENTS IN THE OFFERING DOCUMENTS WERE MATERIALLY FALSE AND MISLEADING

75.     The statements in the Offering Materials (referenced above) were materially false and misleading when made because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about Company's lack of focus on safety and environmental protection.  Specifically, the Offering contained false and/or misleading statements and/or failed to disclose that:

(a)     the PSR strategy had led to increased train derailments and an increased risk of future derailments;

(b)     the PSR strategy was part a culture of increased risk-taking at the expense of reasonable safety precautions due to the Company's near-term focus on profits;

(c)     the Company was more vulnerable to train derailments;

(d)     Norfolk Southern's capital spending and replacement programs were designed to prioritize profits over the Company's ability to provide safe, efficient, and reliable rail transportation services;

(e)     the Company's lobbying efforts had undermined its ability to provide safe, efficient, and reliable rail transportation services;

(f)     the PSR strategy undermined worker safety and the Company's purported "commitment to an injury- free workplace" because the Company's PSR plan prioritized reducing expenses through fewer personnel, longer trains, and less spending on safety training, technology, and equipment;

(g)     the PSR strategy rendered Norfolk Southern more susceptible to accidents that could cause serious economic and bodily harm; and

(h)     the Company failed to put in place responsive practices and procedures to minimize the threat to communities in the event that these communities suffered the derailment of a Norfolk Southern train carrying hazardous and toxic materials.

76.     Further, the undisclosed adverse facts and circumstances detailed above presented known trends, uncertainties, and risks that required disclosure in the Offering Materials. Specifically, Item 303 of SEC Regulation S-K, 17 C.F.R. §229.303 ("Item 303"), required the Company to disclose "any known trends or uncertainties that have had or that are reasonably likely

to have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations." Moreover, Item 105 of Regulation S-K, 17 C.F.R. §229.105 ("Item 105"), required disclosure in the Offering Materials of "the material factors that ma[d]e an investment in [the Offerings] speculative or risky" and an explanation of "how [the] risk affect[ed] [Norfolk Southern] or the securities being offered." The Offering Materials failed to disclose material facts necessary to apprise purchasers of the Norfolk Southern Senior Notes of the true risks inherent in investing in the Company in violation of Item 303 and Item 105.

77.     Specifically, Defendants failed to disclose the fact that PSR has created serious undisclosed safety risks at the Company. The Company's failure to disclose these facts violated Item 303 because these undisclosed facts were known and would (and did) have an unfavorable impact on the Company's operations and financial results. The Company's failure to make these disclosures also violated Item 105, because these specific risks were not adequately disclosed, even though they were significant factors making an investment in the Senior Notes speculative or risky.

**EVENTS AFTER THE OFFERINGS**

78.     On February 3, 2023, at 8:55 p.m. Eastern Standard Time, 38 railcars of a Norfolk Southern freight train carrying several hazardous materials derailed in East Palestine, Ohio. Many of these derailed cars burned for days after the accident while releasing toxic gases. Residents within a 1-mile radius of the derailment site were immediately ordered to evaluate the area and agencies from Ohio, Pennsylvania, and West Virginia initiated emergency response operations. Subsequently, the National Transportation Safety Board ("NTSB"), the Environmental Protection Agency ("EPA") and the FRA launched investigations into Norfolk Southern's safety practices.

79.     On February 8, 2023, once the evacuation order was lifted, Ohio Governor DeWine stated that Norfolk Southern was "the one[] who created the problem. It's their liability. They're the ones who ought to pay for it." Since the accident, residents of the area have reported hazardous

air quality and other health and environmental concerns.  On February 13, 2023, the EPA stated that it had concluded that Norfolk Southern may be responsible for the costs of cleaning up the derailment.

80.   On February 21, 2023, the EPA ordered Norfolk Southern to pay for all cleanup actions at the site with EPA Administrator Michael Regan stating, "Norfolk Southern will pay for cleaning up the mess that they created and for the trauma that they've inflicted on this community." He further stated that "[i]f the company fails to complete any actions as ordered by EPA, the Agency will immediately step in, conduct the necessary work, and then force Norfolk Southern to pay triple the cost."  At the same press conference, both Governor DeWine and Pennsylvania Governor Josh Shapiro stated the need to hold Norfolk Southern accountable and help the people impacted in both states.

81.   On February 23, 2023, the NTSB issued a preliminary report regarding the derailment.  Detailing the report at a Washington, D.C. news conference, NTSB Chairwoman Jennifer Homendy said:

> I can tell you this much: This was 100% preventable. We call things "accidents." There is no accident. Every single event that we investigate is preventable. So our hearts are with, you know, that the NTSB has one goal and that is safety. And ensuring that this never happens again . . . .
>
> *       *       *
>
> We know what happened: A wheel bearing failed.

82.   According to the NTSB, although the failed wheel bearing passed three hot bearing detectors prior to the derailment, the hot bearing detectors would not have notified the crew to stop and inspect the wheel bearing until it recorded a temperature of 170 degrees or higher, per Norfolk Southern rules.  Prior to the derailment, the crew did not get a notification to stop and inspect the wheel bearing until it was 253 degrees Fahrenheit above ambient temperature.

83.   On March 1, 2023, it was reported that Defendant Shaw agreed to testify on the derailment before the U.S. Senate Environment and Public Works Committee on March 9, 2023. Also set to testify at the Senate hearing were EPA regional administrator Debra Shore, Ohio Environmental Protection Agency Director Anne Vogel, and two local officials who were set to address "environmental and public health threats" from the derailment.

84.   On March 4, 2023, another Norfolk Southern freight train derailed near Springfield, Ohio.  About 20 of the train's 212 cars derailed, further revealing the extent of Norfolk Southern's safety failures.

85.   On March 6, 2023, the Company announced a 6-part plan to improve operational safety that included, *inter alia*, adding about 200 temperature sensors along its tracks where existing sensors are at least 15 miles apart, reviewing the temperature levels that set off alarms for train crews, and adding more acoustic sensors that analyze vibrations for potential problems.

86.   On March 7, 2023, the NTSB announced that it had opened a special investigation into safety practices at Norfolk Southern because the Company had suffered five significant accidents since December 2021, three of which resulted in the deaths of Company employees.  The investigation was to focus on Norfolk Southern and its "safety culture," the NTSB said.  "Given the number and significance of recent Norfolk Southern Accidents, the [NTSB] also urges the company to take immediate action today to review and assess its safety practices, with the input of employees and others, and implement necessary changes to improve safety."

87.   Also, on March 7, 2023. the FRA announced it would conduct a 60-day supplemental safety assessment of Norfolk Southern operations.  "After a series of derailments and the death of one of its workers, we are initiating this further supplemental safety review of Norfolk Southern, while also calling on Norfolk Southern to act urgently to improve its focus on

safety so the company can begin earning back the trust of the public and its employees," said U.S. Transportation Secretary Pete Buttigieg in a press release.

88.     On March 14, 2023, Ohio Attorney General Dave Yost filed a complaint against Norfolk Southern with allegations including trespass, nuisance, and negligence in connection with a series of Norfolk Southern train derailments, including the derailments in East Palestine, Ohio and Springfield, Ohio.

89.     By May 2023, the market value of the Senior Notes declined well below their issuance prices.  For instance, the 4.100% Senior Notes due 2121 were issued in May 2021 at 99.737% of their par value.  Since the February 3, 2023 derailment, the price of these notes dropped significantly and as of May 15, 2023 these notes were trading at 68.411% of their par value. Likewise, the 2.900% Senior Notes due 2051 were issued in August 2021 at 99.206% of their par value but since the derailment the price of these notes dropped significantly and as of May 15, 2023 these notes were trading at 64.185% of their par value.

## CLASS ACTION ALLEGATIONS

90.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of all persons and entities that purchased or otherwise acquired Norfolk Southern securities pursuant, or traceable, or both, to the Offering Materials issued in connection with the Offerings, for violations of Sections 11, 12(a)(2), and 15 of the Securities Act, against Defendants.

91.     Excluded from the Class are: (i) all Defendants; (ii) members of the immediate family of any defendant who is an individual; (iii) any person who was an officer or director of Norfolk Southern during the relevant period; (iv) any firm, trust, corporation, or other entity in which any defendant has or had a controlling interest; (v) Norfolk Southern's employee retirement and benefit plan(s) and their participants or beneficiaries, to the extent they made purchases

through such plan(s); and (vi) the legal representatives, affiliates, heirs, successors-in-interest, or assigns of any such excluded person.

92.     The members of the Class are so numerous that joinder of all members is impracticable.  Norfolk Southern securities are actively traded.  While the exact number of Class members is unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, Plaintiffs believe that there could be hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Norfolk Southern or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

93.     Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual Class members, including:

(a)     Whether Defendants violated the Securities Act;

(b)     Whether Defendants omitted or misrepresented material facts, including whether the Offering Materials misrepresented and/or omitted material information in violation of the Securities Act; and

(c)     The extent of damage sustained by Class members and the appropriate measure of damages.

94.     Plaintiffs' claims are typical of those of the Class because Plaintiffs and the Class sustained damages from Defendants' wrongful conduct.

95.     Plaintiffs will adequately protect the Class' interests.  They have counsel experienced in securities class action litigation and its interests do not conflict with the Class'.

96.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the

damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## COUNT I

**For Violation for Section 11 of the Securities Act Against Norfolk Southern, the Individual Defendants, and the Underwriter Defendants**

97.     Plaintiffs repeat, incorporate, and realleges each and every allegation set forth above as if fully set forth herein.

98.     This Count is brought under §11 of the Securities Act, 15 U.S.C. §77k, on behalf of the Class, against Norfolk Southern, the Individual Defendants, and the Underwriter Defendants.  This Count does not allege, and does not intend to allege, fraud or fraudulent intent, which is not a required element of §11, and any implication of fraud or fraudulent intent is hereby expressly disclaimed.

99.     The Offering Materials contained inaccurate and misleading statements of material fact, omitted facts necessary to render statements therein not misleading, and omitted to state material facts required to be stated therein.

100.     Norfolk Southern is the registrant for the Offering.  Defendants were responsible for the contents and dissemination of the Offering Materials.  Each of the Individual Defendants signed or authorized the signing of the Offering Materials on their own behalf or consented to being named a director of Norfolk Southern.  The Underwriter Defendants marketed and underwrote the Offerings and sold the majority of Norfolk Southern securities issued in the Offerings to Plaintiffs and the Class.

101.     As the issuer of the securities, Norfolk Southern is strictly liable to Plaintiff sand the Class for the Offering Materials' material misstatements and omissions.  Signatories of the

Offering Materials, and possibly other Defendants, may also be strictly liable to Plaintiffs and the Class for such material misstatements and omissions. None of the Defendants made a reasonable investigation or possessed reasonable grounds to believe that the statements in the Offering Materials were complete, accurate, or non-misleading.

102.    Less than one year has elapsed from the time that Plaintiffs discovered, or reasonably could have discovered, the facts upon which these claims are based to the time that Plaintiffs filed this action. Less than three years have elapsed between the time that the securities upon which this Count is brought were offered to the public and the time plaintiff filed this action.

## COUNT II

**For Violation of Section 12(a)(2) of the Securities Act Against All Defendants**

103.    Plaintiffs repeat, incorporate, and reallege each and every allegation set forth above as if fully set forth herein.

104.    This Cause of Action is brought pursuant to Section 12(a)(2) of the Securities Act, 15 U.S.C. § 77l(a)(2), on behalf of the Class, against all Defendants. This Count does not allege, and does not intend to allege, fraud or fraudulent intent, which is not a required element of §12(a)(2), and any implication of fraud or fraudulent intent is hereby expressly disclaimed.

105.    Each of the Defendants named in this Count were sellers, offerors, or solicitors of purchases of the Company's common securities pursuant to the defective prospectuses which respectively formed in relevant part the Offering Materials. The actions of solicitation by the Defendants include participating in the preparation of the false and misleading prospectuses and marketing the securities to investors, such as Plaintiffs and other members of the Class.

106.    The Offering Materials contained untrue statements of material fact, omitted to state other facts necessary to make statements made therein not misleading, and omitted to state material facts required to be stated therein.

107.    Each of the Defendants owed Plaintiffs and other members of the Class who purchased or otherwise acquired Norfolk Southern securities pursuant to the prospectuses issued in connection with the Offering Materials a duty to make a reasonable and diligent investigation of the statements contained in the prospectuses to ensure that such statements were true and that there was no omission to state a material fact required to be stated in order to make the statements contained therein not misleading.  By virtue of each of the Defendants' failure to exercise reasonable care, the prospectuses contained misrepresentations of material fact and omissions of material fact necessary to make the statements therein not misleading.

108.    Plaintiffs and the members of the Class did not know, nor in the exercise of reasonable diligence could have known, of the untruths and omissions contained in the prospectuses issued in connection with Offerings at the time they purchased or otherwise acquired Norfolk Southern securities.

109.    By reason of the conduct alleged herein, the Defendants violated Section 12(a)(2) of the Securities Act.  As a direct and proximate result of such violations, Plaintiffs and the other members of the Class who purchased or otherwise acquired Norfolk Southern securities pursuant to the prospectuses issued in connection with the Offering Materials sustained substantial damages in connection therewith.  Accordingly, Plaintiffs and the other members of the Class who hold the securities issued pursuant to the prospectuses issued in connection with the Offering Materials have the right to rescind and recover the consideration paid for their securities with interest thereon or damages as allowed by law or in equity.  Class members who have sold their Norfolk Southern securities seek damages to the extent permitted by law.

110.    Less than one year has elapsed from the time that Plaintiffs discovered, or reasonably could have discovered, the facts upon which this complaint is based to the time that

Plaintiffs filed this action.  Less than three years have elapsed between the time that the securities upon which this count is brought were offered to the public and the time Plaintiffs filed this action.

### COUNT III

**For Violation of Section 15 of the Securities Act Against the Individual Defendants**

111.    Plaintiffs repeat, incorporate, and reallege each and every allegation set forth above as if fully set forth herein.

112.    This Count is brought under §15 of the Securities Act, 15 U.S.C. §77o, against defendants the Individual Defendants.  This Count does not allege, and does not intend to allege, fraud or fraudulent intent, which is not a required element of §15, and any implication of fraud or fraudulent intent is hereby expressly disclaimed.

113.    As detailed herein, each of the defendants committed primary violations of the Securities Act by engaging in conduct in contravention of §11 of the Securities Act.

114.    The Individual Defendants were each control persons of Norfolk Southern by virtue of their positions as directors, senior officers, and/or significant shareholders of the Company or by virtue of their consent to be named as directors of Norfolk Southern.  They each had direct and/or indirect business and/or personal relationships with other directors, officers, and/or major shareholders of the Company.  The Company also controlled the Individual Defendants, given the influence and control the Company possessed and exerted over the Individual Defendants and all of its employees.

115.    By reason of the conduct alleged herein, the Company and the Individual Defendants violated §15 of the Securities Act, and Plaintiffs and the Class have suffered harm as a result.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the proposed Class, respectfully pray for judgment against defendants as follows:

A.      Determining that this action is a proper class action, designating Plaintiffs as Lead Plaintiff and certifying Plaintiffs as class representatives under Rule 23 of the Federal Rules of Civil Procedure and Plaintiffs' counsel as Lead Counsel;

B.      Awarding Plaintiffs and the Class compensatory damages against all Defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, together with pre-judgment interest thereon;

C.      Awarding Plaintiffs and the Class their reasonable costs and expenses incurred in this action, including, but not limited to, attorneys' fees and costs incurred by consulting and testifying expert witnesses; and

D.      Granting such other, further, and/or different relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury.

DATED: May 16, 2023

**LABATON SUCHAROW LLP**

/s/ Francis P. McConville
Francis P. McConville
Guillaume Buell
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 8180-0477
fmcconville@labaton.com
gbuell@labaton.com

*Counsel for Plaintiffs and the Proposed Class*

**ASHERKELLY, ATTORNEYS AT LAW**

Cynthia Billings-Dunn (*pro hac vice* forthcoming)
25800 Northwestern Highway, Suite 1100
Southfield, Michigan 48075
Telephone: (248) 746-2747
cbdunn@asherkellylaw.com

*Additional Counsel for Plaintiff City of Pontiac*
*Reestablished General Employees' Retirement*
*System*

## CERTIFICATION

I,  Anthony W. Holbrook as Chairman of Ohio Carpenters Pension Fund ("Ohio Carpenters"), hereby certify as follows:

1.      I am fully authorized to enter into and execute this Certification on behalf of Ohio Carpenters.  I have reviewed a complaint prepared against Norfolk Southern Corporation ("Norfolk Southern"), alleging violations of the federal securities laws and authorize the filing of this pleading;

2.      Ohio Carpenters did not purchase securities of Norfolk Southern at the direction of counsel or in order to participate in any private action under the federal securities laws;

3.      Ohio Carpenters is willing to serve as a lead plaintiff and representative party in this matter, including providing testimony at deposition and trial, if necessary.  Ohio Carpenters fully understands the duties and responsibilities of the lead plaintiff under the Private Securities Litigation Reform Act, including the selection and retention of counsel and overseeing the prosecution of the action for the Class;

4.      Ohio Carpenters' transactions in Norfolk Southern securities during the Class Period are reflected in Exhibit A, attached hereto;

5.      Ohio Carpenters sought to serve as a lead plaintiff in the following class actions under the federal securities laws filed during the last three years:

*Sheet Metal Workers Local 19 Pension Fund v. ProAssurance Corporation*, No. 2:20-cv-0856 (N.D. Ala.)
*City of Grand Rapids General Retirement System and City of Grand Rapids Police & Fire Retirement System v. Bayer Aktiengesellschaft*, No. 3:20-cv-4737 (N.D. Cal.)
*City of Birmingham Relief and Retirement System v. Acadia Pharmaceuticals Inc.*, No. 3:21-cv-0762 (S.D. Cal.)
*Leventhal v. Chegg, Inc.*, No. 5:21-cv-9953 (N.D. Cal.)
*The Buhrke Family Revocable Trust v. U.S. Bancorp*, No. 1:22-cv-9174 (S.D.N.Y.)

6.      Beyond its pro rata share of any recovery, Ohio Carpenters will not accept payment for serving as a lead plaintiff and representative party on behalf of the Class, except the reimbursement of such reasonable costs and expenses (including lost wages) as ordered or approved by the Court.

I declare under penalty of perjury, under the laws of the United States, that the foregoing is true and correct this _15_ day of May, 2023.

_Anthony W. Holbrook_    Chairman

*Ohio Carpenters Pension Fund*

**EXHIBIT A**

**TRANSACTIONS IN NORFOLK SOUTHERN CORPORATION**

| Transaction Type | Trade Date | Shares | Price Per Share | Cost/Proceeds |
|---|---|---|---|---|
| Purchases | 5/3/2021 | 891,000.00 | $99.74 | ($88,865,667.00) |
| Sales | 8/4/2022 | -891,000.00 | $80.05 | $71,324,550.00 |

## CERTIFICATION

I, Sheldon Albritton, as Chairman of City of Pontiac Reestablished General Employees' Retirement System ("Pontiac General"), hereby certify as follows:

1.      I am fully authorized to enter into and execute this Certification on behalf of Pontiac General.  I have reviewed a complaint prepared against Norfolk Southern Corporation ("Norfolk Southern"), alleging violations of the federal securities laws and authorize the filing of this pleading;

2.      Pontiac General did not purchase securities of Norfolk Southern at the direction of counsel or in order to participate in any private action under the federal securities laws;

3.      Pontiac General is willing to serve as a lead plaintiff and representative party in this matter, including providing testimony at deposition and trial, if necessary.  Pontiac General fully understands the duties and responsibilities of the lead plaintiff under the Private Securities Litigation Reform Act, including the selection and retention of counsel and overseeing the prosecution of the action for the Class;

4.      Pontiac General's transactions in Norfolk Southern securities during the Class Period are reflected in Exhibit A, attached hereto;

5.      Pontiac General sought to serve as a lead plaintiff or representative party in the following class actions under the federal securities laws filed during the last three years:

*In re Ardelyx, Inc*, No. 4:21-cv-5868 (N.D. Cal.)
*City of Pontiac General Employees' Retirement System v. First Solar, Inc.*, No. 2:22-cv-0036 (D. Ariz.)
*Robison v. Digital Turbine, Inc.*, No. 1:22-cv-0550 (W.D. Tex.)
*Grobler v. Inotiv, Inc.*, No. 4:22-cv-0045 (N.D. Ind.)
*Genesee County Employees' Retirement System v. Kornit Digital Ltd.*, No. 2:23-cv-0888 (D.N.J.)

6.      Beyond its pro rata share of any recovery, Pontiac General will not accept payment for serving as a lead plaintiff and representative party on behalf of the Class, except the reimbursement of such reasonable costs and expenses (including lost wages) as ordered or approved by the Court.

I declare under penalty of perjury, under the laws of the United States, that the foregoing is true and correct this _2023-05-16_ day of May, 2023.

*Sheldon Albritton*

_____ Sheldon Albritton

Sheldon Albritton
*Chairman*
*City of Pontiac Reestablished General Employees'*
*Retirement System*

**EXHIBIT A**

**TRANSACTIONS IN NORFOLK SOUTHERN CORPORATION**

| Transaction Type | Trade Date | Shares | Price Per Share | Cost/Proceeds |
|---|---|---|---|---|
| Purchases | 8/16/2021 | 230,000.00 | $99.21 | ($22,817,380.00) |
| Sales | 2/1/2022 | -60,000.00 | $91.68 | $5,500,554.00 |