UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| OHIO CARPENTERS PENSION FUND and CITY OF PONTIAC REESTABLISHED GENERAL EMPLOYEES RETIREMENT SYSTEM, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br> -v-<br><br>NORFOLK SOUTHERN CORPORATION, ALAN H. SHAW, JAMES A. SQUIRES, MARK R. GEORGE, CLYDE H. ALLISON, JR., THOMAS D. BELL, JR., MITCHELL E. DANIELS, JR., MARCELA D. DONADIO, JOHN C. HUFFARD, CHRISTOPHER T. JONES, THOMAS C. KELLEHER, STEVEN F. LEER, MICHAEL D. LOCKHART, AMY E. MILES, CLAUDE MONGEUA, JENNIFER F. SCANLON, JOHN R. THOMPSON, BOFA SECURITIES, INC., MORGAN STANLEY & CO. LLC, WELLS FARGO SECURITIES LLC, CAPITAL ONE SECURITIES, INC., FIFTH THIRD SECURITIES, INC., MUFG SECURITIES AMERICA, INC., PNC CAPITAL MARKETS LLC, SIEBERT WILLIAMS SHANK & CO., LLC, SMBC NIKKO SECURITIES AMERICA, INC., CITIGROUP GLOBAL MARKETS, INC, GOLDMAN SACHS & CO. LLC, and U.S. BANCORP INVESTMENTS, INC.,<br><br>        Defendants. | CIVIL ACTION NO.: 23 Civ. 4068 (LAK) (SLC)<br><br>**OPINION AND ORDER** |

**SARAH L. CAVE**, United States Magistrate Judge.

### I. INTRODUCTION

Plaintiffs Ohio Carpenters Pension Fund ("Ohio Carpenters") and City of Pontiac Reestablished General Employees Retirement System ("Pontiac General," with Ohio Carpenters, "Plaintiffs") bring this putative securities class action against Norfolk Southern Corporation ("Norfolk Southern"), various Norfolk Southern officers and directors (the "Individual

Defendants"),[1] and the underwriters of certain of Norfolk Southern securities that Plaintiffs purchased (the "Underwriter Defendants,"[2] with Norfolk Southern and the Individual Defendants, "Defendants"), for alleged violations of Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§ 77k, 77l(a)(2), and 77o. (ECF No. 1 (the "Complaint")). Before the Court is Plaintiffs' unopposed motion to be appointed as lead plaintiffs and for their chosen counsel to be appointed as lead counsel pursuant to Section 27(a)(3)(B) of the Securities Act, 15 U.S.C. § 77z-1(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). (ECF No. 84 (the "Motion")).[3]

For the reasons set forth below, the Motion is GRANTED.

## II.   BACKGROUND

Norfolk Southern is "a major rail transportation company" that is "primarily focused on the rail transportation of raw materials, intermediate products, and finished goods across the

---

[1] The Individual Defendants are Alan H. Shaw, James A. Squires, Mark R. George, Clyde H. Allison, Jr., Thomas D. Bell, Jr., Mitchell E. Daniels, Jr., Marcela D. Donadio, John C. Huffard, Christopher T. Jones, Thomas C. Kelleher, Steven F. Leer, Michael D. Lockhart, Amy E. Miles, Claude Mongeua, Jennifer F. Scanlon, and John R. Thompson. (See ECF No. 1 ¶¶ 18–34).

[2] The Underwriter Defendants are BofA Securities, Inc., Morgan Stanley & Co. LLC, Wells Fargo Securities LLC, Capital One Securities, Inc., Fifth Third Securities, Inc., MUFG Securities America, Inc., PNC Capital Markets LLC, Siebert Williams Shank & Co., LLC, SMBC Nikko Securities America, Inc., Citigroup Global Markets, Inc, Goldman Sachs & Co. LLC, and U.S. Bancorp Investments, Inc. (See ECF No. 1 ¶ 37–49).

[3] The Honorable Lewis A. Kaplan referred this matter to me for general pretrial supervision, including all non-dispositive pretrial motions, as well as for a report and recommendation on all dispositive motions. (ECF No. 61). "[A]n order appointing lead plaintiff and approving lead counsel qualifies as a non-dispositive matter under Rule 72(a) of the Federal Rules of Civil Procedure, allowing this Court to issue a written order (i.e., a Memorandum and Order) rather than a recommended disposition (i.e., a Report and Recommendation)." City of Hollywood Police Officers Ret. Sys. v. Henry Schein, Inc., No. 19 Civ. 5530 (FB), 2019 WL 13167890, at *1 (E.D.N.Y. Dec. 23, 2019) (citing Fed. R. Civ. P. 72(a)); see Buhrke Fam. Revocable Tr. v. U.S. Bancorp, No. 22 Civ. 9174 (JPC) (SLC), 2023 WL 1879525, at *1 (S.D.N.Y. Feb. 10, 2023) (appointing lead plaintiff and approving lead counsel by opinion and order); Carpenter v. Oscar Health, Inc., 631 F. Supp. 3d 157, 160 (S.D.N.Y. 2022) ("A Magistrate Judge may issue an order appointing lead plaintiff and approving lead counsel under Rule 72 of the Federal Rules of Civil Procedure.") (collecting cases).

Southeast, East, and Midwest United States." (ECF No. 1 ¶ 4). On May 16, 2023, Plaintiffs filed the Complaint on behalf of a class (the "Putative Class") "of all persons and entities that purchased or otherwise acquired [certain] Norfolk Southern senior notes" (the "Senior Notes") offered between August 18, 2020 and January 26, 2023 (the "Offerings"). (Id. ¶ 1). Plaintiffs allege that offering materials (the "Offering Materials") provided to prospective investors regarding the Senior Notes "failed to disclose material safety risks in connection with Norfolk Southern's implementation of its Precision Scheduled Railroading ('PSR'), a strategy adopted by [Norfolk Southern] in 2019." (Id. ¶ 5; see id. ¶¶ 9(a)–(h)).

According to Plaintiffs, "the statements contained in the Offering Materials were materially false and misleading when made because the Offering Materials touted [Norfolk Southern]'s focus on safety and environmental protection while failing to disclose [certain] adverse facts" that were "later disclosed to the public" after 38 railcars of a Norfolk Southern freight train carrying several hazardous materials derailed in East Palestine, Ohio on February 3, 2023. (ECF No. 1 ¶ 9, 78; see id. ¶¶ 51–77). These undisclosed facts "made an investment in the Senior Notes speculative or risky, and presented known trends, uncertainties, and risks that required disclosure in the Offering[] Materials which were not disclosed, including adverse trends and risks related to the safety of Norfolk Southern's operations." (Id. ¶ 10). "As a result of these misleading statements and omissions, the price of the Senior Notes dropped significantly causing hundreds of millions of dollars in damages to holders of the Senior Notes." (Id. ¶ 11). The Individual Defendants "were involved in drafting, producing, reviewing, and disseminating the false and misleading statements and information . . . , were aware of, or recklessly disregarded, the false and misleading statements being issued regarding [Norfolk Southern], and approved or

3

ratified these statements[.]" (Id. ¶ 35). Plaintiffs also allege that the "Underwriter Defendants' failure to conduct adequate due diligence in connection with the Offerings and the preparation of the Offering Materials was a substantial factor leading to the harm" suffered by Plaintiffs and the Putative Class. (Id. ¶ 49).

Also on May 16, 2023, Plaintiffs' counsel, Labaton Sucharow LLP ("Labaton Sucharow"), published notice of the Complaint on "Business Wire," a press-release distribution service. (ECF No. 86-4 (the "Notice")). The Notice, which was addressed to investors who "purchased or acquired Senior Notes pursuant and/or traceable to the Offering Materials and were damaged thereby," informed the Putative Class members that they had until July 17, 2023 to move to serve as the lead plaintiff through counsel of their choice. (Id. at 4).

On July 17, 2023, Plaintiffs filed the Motion, jointly seeking appointment as lead plaintiffs and proposing Labaton Sucharow as lead counsel. (ECF No. 84). That same day, Plaintiffs requested oral argument on the Motion. (ECF No. 88 (the "Request")). On July 18, 2023, the Court so-ordered the parties' stipulation extending Defendants' deadline to respond to the Complaint "until after a Lead Plaintiff has been appointed and an operative complaint has been filed or so designated[.]" (ECF No. 91 at 3 (the "Stipulation")). On July 31, 2023, having received no opposition to the Motion or competing motion for lead-plaintiff appointment, Plaintiffs filed a notice that the Motion is unopposed. (ECF No. 95).

### III. LEGAL STANDARDS

#### A. Appointment of Lead Plaintiff

The PSLRA establishes a procedure for the appointment of a lead plaintiff in "each private action . . . that is brought as a plaintiff class action pursuant to the Federal Rules of Civil

4

Procedure." 15 U.S.C. § 77z-1(a)(1). "Not later than 20 days" after the first complaint is filed, a notice must be published "in a widely circulated national business-oriented publication or wire service" advising members of the purported class "of the pendency of the action, the claims asserted therein, and the purported class period" and that "not later than 60 days after the date on which the notice is published, any member of the purported plaintiff class may move the court to serve as lead plaintiff . . . ." Id. § 77z-1(a)(3)(A)(i)(I)–(II). The Court must then "appoint as lead plaintiff the member or members . . . that the court determines to be most capable of adequately representing the interests of class members." Id. § 77z-1(a)(3)(B)(i).

The PSLRA creates a rebuttable presumption that "the most adequate plaintiff" is the person or group that:

> (aa) has either filed the complaint or made a motion [to be appointed lead plaintiff];
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 77z-1(a)(3)(B)(iii)(I). "This presumption may only be rebutted by proof that the purportedly most adequate plaintiff 'will not fairly and adequately protect the interests of the class' or 'is subject to unique defenses that render such plaintiff incapable of adequately representing the class.'" Maliarov v. Eros Int'l PLC, No. 15 Civ. 8956 (AJN), 2016 WL 1367246, at *2 (S.D.N.Y. Apr. 5, 2016) (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)–(bb)); see 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II)(aa)–(bb).[4]

---

[4] Unless otherwise indicated, all internal citations and quotation marks are omitted from case citations.

"[T]hough the PSLRA expressly permits a 'group of persons' to be appointed as lead plaintiff, the PSLRA does not define what a 'group' can or should be, nor how its 'members' must be related to one another." Carpenter, 631 F. Supp. 3d at 162. "In this District, courts have permitted unrelated investors to join together as a group seeking lead-plaintiff status on a case-by-case basis, if such a grouping would best serve the class." Id. at 162–63 (collecting cases).

### B. Appointment of Lead Counsel

The PSLRA provides that the "most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 77z-1(a)(3)(B)(v). "There is a 'strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection.'" Salinger v. Sarepta Therapeutics, Inc., No. 19 Civ 8122 (VSB), 2019 WL 6873807, at *5 (S.D.N.Y. Dec. 17, 2019) (quoting Sallustro v. CannaVest Corp., 93 F. Supp. 3d 265, 278 (S.D.N.Y. 2015)).

### IV. DISCUSSION

"Even when a motion to appoint lead plaintiff is unopposed, the Court must still consider the factors under the PSLRA to ensure that the movant is the most adequate plaintiff." City of Warren Police & Fire Ret. Sys. v. Foot Locker, Inc., 325 F. Supp. 3d 310, 314 (E.D.N.Y. 2018); see Vega v. Energy Transfer LP, No. 22 Civ. 4614 (AKH), 2022 WL 3228209, at *2 (S.D.N.Y. Aug. 10, 2022). For the reasons set forth below, the Court finds that Plaintiffs meet that standard.

### A. Plaintiffs are the Presumptive Most Adequate Plaintiffs.

The Court finds that Plaintiffs meet the PSLRA's three requirements to be presumed the "most adequate." 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(aa)–(cc). First, Plaintiffs satisfied the PSLRA's procedural requirement when they filed the Complaint and a timely Motion for lead-plaintiff

6

appointment. On May 16, 2023, Plaintiffs filed the Complaint, and Labaton Sucharow published the Notice in Business Wire, "a 'widely circulated national business-oriented . . . wire service[.]'" Crass v. Yalla Grp. Ltd., No. 21 Civ. 6854 (PAE), 2021 WL 5181008, at *4 (S.D.N.Y. Nov. 8, 2021) (quoting 15 U.S.C. § 78u–4(a)(3)(A)(i)); see 15 U.S.C. § 77z–1(a)(3)(A)(i). (See ECF Nos. 1; 86-4). The Notice advised the Putative Class members of the filing of the Complaint, the claims asserted, the dates of the Offerings, and the deadline to file lead-plaintiff motions. (ECF No. 86-4). Plaintiffs filed the Motion on July 17, 2023, i.e., within the 60-day statutory period. (ECF No. 84). See 15 U.S.C. § 77z-1(a)(3)(A)(i)(II). Accordingly, because Plaintiffs "filed the [C]omplaint" and timely moved for appointment as lead plaintiffs, they satisfied the first requirement under 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I).

Second, Plaintiffs appear to have the largest financial interest in the relief sought by the Putative Class. "In making the determination of which plaintiff has the greatest financial interest, courts consider four factors: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered." Salinger, 2019 WL 6873807, at *3 (citing In re eSpeed, Inc. Sec. Litig., 232 F.R.D. 95, 100 (S.D.N.Y. 2005)). "Of these factors, courts have consistently held that the fourth, the magnitude of the loss suffered, is most significant." Mustafin v. GreenSky, Inc., No. 18 Civ. 11071 (PAE), 2019 WL 1428594, at *4 (S.D.N.Y. Mar. 29, 2019) (collecting cases).

These factors weigh in Plaintiffs' favor. Plaintiffs represent that, in connection with the Offerings, they suffered losses totaling $239,804.11 on transactions in Senior Notes. (ECF No. 86-2; see ECF Nos. 1 at 32–37; 86-1). "Because no other plaintiff has come forward

suggesting that it has a greater financial interest in this litigation, these factors weigh heavily in favor of" Plaintiffs. Omdahl v. Farfetch Ltd., No. 19 Civ. 8657 (AJN), 2020 WL 3072291, at *3 (S.D.N.Y. June 10, 2020).

Third, Plaintiffs satisfy the relevant requirements of Rule 23. That Rule permits a party to sue on behalf of a class if:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). "For the purposes of appointment as lead plaintiff pursuant to the PSLRA, however, 'the moving plaintiff must only make a preliminary showing that the adequacy and typicality requirements have been met.'" In re Deutsche Bank Aktiengesellschaft Sec. Litig., No. 16 Civ. 3495 (AT) (BCM), 2016 WL 5867497, at *4 (S.D.N.Y. Oct. 4, 2016) (quoting Janbay v. Canadian Solar, Inc., 272 F.R.D. 112, 120 (S.D.N.Y. 2010)); see Vega, 2022 WL 3228209, at *1 ("[A]s to Rule 23, 'at this early stage of litigation,' only 'typicality and adequacy[ ] are pertinent.'") (quoting Mustafin, 2019 WL 1428594, at *5). "For the rebuttable presumption to apply, courts have required only a prima facie showing that the requirements of Rule 23 are met." Sallustro, 93 F. Supp. 3d at 277–78 (collecting cases).

Plaintiffs have made a prima facie showing that they meet both the typicality and adequacy requirements.[5] "The typicality requirement 'is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" Maliarov, 2016 WL 1367246, at *6 (quoting In re Drexel Burnham Lambert Grp., Inc., 960 F.2d 285, 291 (2d Cir. 1992)).  Here, Plaintiffs' claims are typical of those of the Putative Class because, "[l]ike all other Class members, [Plaintiffs]: (i) purchased the Norfolk Southern Senior Notes pursuant or traceable to the Offerings; (ii) in reliance on Defendants' false and misleading statements; and (iii) were damaged as a result." (ECF No. 85 at 10–11; see ECF Nos. 86-2; 86-3 ¶ 13).  "To satisfy the adequacy requirement, [Plaintiffs] must demonstrate that '(1) [their choice of] class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between [them] and the members of the Putative [C]lass; and (3) the [they have] a sufficient interest in the outcome of the case to ensure vigorous advocacy.'"  Omdahl, 2020 WL 3072291, at *3 (quoting Foley v. Transocean Ltd., 272 F.R.D. 126, 131 (S.D.N.Y. 2011)).  Here, Plaintiffs have provided support "demonstrating the extensive experience of their [] chosen law firm[] . . . in complex securities class action suits, and no other party suggests otherwise."  Id.  (See ECF No. 85 at 12, 14–15). "Nor does any party suggest that these two [P]laintiffs have a conflict between their own interests and those of the [Putative] [C]lass or that their demonstrated financial interest in the litigation is insufficient to ensure vigorous advocacy." Omdahl, 2020 WL 3072291, at *3.

---

[5] "Any preliminary findings of typicality and adequacy for purposes of appointing a lead plaintiff do not preclude any party from contesting the ultimate class certification in the future." Vladimir v. Bioenvision, Inc., No. 07 Civ. 6416 (SHS) (AJP), 2007 WL 4526532, at *6 n.14 (S.D.N.Y. Dec. 21, 2007) (collecting cases).

Finally, the Court is satisfied that appointing Plaintiffs jointly "would best serve" the Putative Class. Carpenter, 631 F. Supp. 3d at 162.  In a joint declaration submitted in support of the Motion, Plaintiffs explain that they "each independently determined that they could maximize the Class' recovery by pooling their respective resources and experience by jointly seeking appointment as Lead Plaintiff." (ECF No. 86-3 ¶ 8).  They also state that their "principal goal in seeking to serve as Lead Plaintiff in this case is to achieve the best possible recovery for the Class from all culpable parties."  (Id. ¶ 6).  Moreover, Plaintiffs appear to be sophisticated investors, and have indicated that they fully understand their responsibilities and obligations as lead plaintiff. (Id. ¶¶ 3, 5–7).  Given the absence of opposition to the Motion, "the Court has been presented with no proof that they 'will not fairly and adequately protect the interests of the class' or are 'subject to unique defenses that render such plaintiff[s] incapable of adequately representing the class.'"   Omdahl, 2020 WL 3072291, at *3 (quoting 15 U.S.C. §§ 78u-4(a)(3)(B)(iii)(II)(aa)–(bb)); see 15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(II)(aa)–(bb); see also Carpenter, 631 F. Supp. 3d at 163 (appointing co-lead plaintiffs based on unopposed "representation that they [could] effectively work together to vigorously pursue the claims on behalf of the proposed class"); Mustafin, 2019 WL 1428594, at *1, 5 (appointing as lead plaintiffs a "coalition of institutional investors" that "pledge[d] to work closely together to vigorously prosecute the claims on behalf of the class").

*     *     *

Accordingly, Plaintiffs' Motion to be appointed as lead plaintiffs is GRANTED.

### B. Labaton Sucharow is Approved as Lead Counsel

Plaintiffs propose Labaton Sucharow to serve as lead counsel. (ECF Nos. 84 at 2; 85 at 14–15). As discussed above, the PSLRA provides that the "most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class[,]" 15 U.S.C. § 77z-1(a)(3)(B)(v), and "[t]here is a 'strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection.'" Salinger, 2019 WL 6873807, at *5 (quoting Sallustro, 93 F. Supp. 3d at 278); see Rasella v. Musk, 342 F.R.D. 74, 84 (S.D.N.Y. 2022) ("The PSLRA 'evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention.'") (quoting In re Adelphia Commc'ns Corp. Sec. & Derivative Litig., 2008 WL 4128702, at *2 (S.D.N.Y. Sept. 3, 2008)).

Plaintiffs have established that Labaton Sucharow is an appropriate selection for lead counsel. Indeed, "Labaton Sucharow has extensive experience in litigating shareholder class actions and has been lead counsel in actions that have settled for hundreds of millions of dollars." Oklahoma Firefighters Pension & Ret. Sys. v. Peabody Energy Corp., No. 20 Civ. 8024 (PKC), 2021 WL 100491, at *2 (S.D.N.Y. Jan. 12, 2021). (See ECF No. 85 at 15). "The Court is persuaded that Labaton Sucharow can capably represent the class here, given the firm's experience in litigating class action lawsuits." Plymouth Cnty. Ret. Ass'n v. Innovative Tech., Inc., No. 21 Civ. 4390 (VM), 2021 WL 4298191, at *6 (S.D.N.Y. Sept. 21, 2021).

Accordingly, Plaintiffs' Motion to appoint Labaton Sucharow as lead counsel is GRANTED.

## V. CONCLUSION

For the reasons set forth above, Plaintiffs' Motion (ECF No. 84) is GRANTED. Ohio Carpenters and Pontiac General are appointed lead plaintiffs, and Labaton Sucharow is appointed as lead counsel. Plaintiffs' Request for oral argument (ECF No. 88) is DENIED as moot.

Pursuant to the Stipulation, the parties shall promptly meet and confer and, by **October 5, 2023**, file a proposed schedule for (a) the filing of an amended complaint or the designation of the initial Complaint as the operative complaint, (b) and Defendants' response thereto, and (c) in the event Defendants file motions to dismiss the operative complaint, a date by which Lead Plaintiffs shall file opposition papers and Defendants shall file reply papers. (ECF No. 91 ¶ 4).

The Clerk of Court is respectfully directed to close ECF Nos. 84 and 88.

Dated:     New York, New York
           September 21, 2023

SO ORDERED.

**SARAH L. CAVE**
**United States Magistrate Judge**